IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SYREETA L. KEE                                                                                                    PLAINTIFF

V.                                                                              CIVIL ACTION NO. 4:20-CV-127-SA-JMV

HOWARD L. NATIONS, P.C.
a/k/a THE NATIONS LAW FIRM                                                                            DEFENDANT

ORDER AND MEMORANDUM OPINION

Now before the Court are the parties' Cross Motions for Summary Judgment [177, 179]. Having reviewed the parties' filings, along with the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*[1]

This is a legal malpractice action. Syreeta Kee contends that The Nations Law Firm (sometimes hereinafter "The Firm")—a Texas-based law firm—failed to properly pursue claims on her behalf arising from injuries she suffered pertaining to the implantation of an IVC filter in her leg. In essence, she contends that The Nations Law Firm is responsible for allowing the statute of limitations to lapse on any potential claim she had.

In 2009, Kee was involved in a car wreck. She later developed deep vein thrombosis ("DVT"), and an IVC filter was placed in her right leg. Kee suffered from numerous issues associated with the IVC filter after its placement. She had stents placed in her leg on two different occasions in 2014. On November 11, 2014, Kee underwent a partial removal of the IVC filter and the placement of another stent. Dr. Scott H. McPherson performed that procedure.

In June 2015, Kee was admitted to St. Dominic Hospital in Jackson, Mississippi for issues associated with the November 11, 2014 procedure. She was discharged from St. Dominic in early

---

[1] Much of this factual recitation was previously set forth by the Court in a previous Order [154].

July 2015. After seeing an advertisement, Kee communicated with The Nations Law Firm regarding a potential claim concerning the IVC filter. On September 4, 2015, Kee signed an Attorney-Client Contract which The Nations Law Firm had forwarded to her. In pertinent part, that Contract states "Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: Injury(ies) after implantation of IVC filter." [177], Ex. 1. Via letter dated August 21, 2017, The Nations Law Firm notified Kee "[i]t appears that you received an ALN Optional IVC filter and we do not know of certain complications with your filter . . . We write to inform you that we are closing your file." [179], Ex. 5.

On July 16, 2020, Kee initiated this action against The Nations Law Firm.[2] She has since amended her Complaint on multiple occasions—the most recent amendment having been a sharply contested issue. The Court addressed that matter in detail in its December 13, 2021 Order [154], ultimately granting in part and denying in part Kee's request to amend. She filed her Second Amended Complaint [156] shortly thereafter.

In her Amended Complaint [156], Kee contends that a two-year statute of limitations was applicable to her underlying medical malpractice claim and The Nations Law Firm committed malpractice by delaying for such an extended period of time prior to advising her that it would not pursue a claim on her behalf. In particular, she alleges:

> [The Nations Law Firm] and its attorney[s,] agents[,] and employees failed to promptly determine, investigate and hire knowledgeable experts to recognize and determine the retrievability of the ALN Optional filter implanted in plaintiff. Furthermore, [The Nations Law Firm] and its attorneys and agents failed to timely advise plaintiff that [The Nations Law Firm] did not handle medical negligence claims arising from and associated with an interventional radiologists [sic] failure to recognize an ALN Optional retrievable IVC filter in time for plaintiff to obtain other legal counsel to initiate litigation concerning her medical negligence claims not pursued by

---

[2] Kee also named Howard L. Nations, individually, as a Defendant in this case. However, the Court dismissed *without prejudice* Kee's claims against him for lack of personal jurisdiction. *See* [118].

> [The Nations Law Firm] arising from Dr. McPherson's actions and conduct[.]

[156] at p. 9-10.

She asserts that The Nations Law Firm should be held liable for legal malpractice and breach of fiduciary duty for its failure to promptly advise her that it did not intend to pursue a claim on her behalf and that, in essence, The Firm's delay caused her to be unable to obtain a remedy for her injuries prior to the expiration of the statute of limitations. Kee also asserts a claim for punitive damages based upon the same alleged conduct.

As noted above, the parties have now filed Cross Motions for Summary Judgment [177, 179]. The Cross Motions [177, 179] arise from the language of the Attorney-Client Contract and, more particularly, the agreed upon scope of The Nations Law Firm's representation.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240 at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the

3

inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

Prior to addressing the parties' arguments, the Court notes that the Attorney-Client Contract contains a choice of law provision, providing in pertinent part:

> VIII. Texas Law. This Contract shall be construed under and in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performable in Houston, Harris County, Texas.

[177], Ex. 1.

The parties do not dispute that the Contract must be interpreted in accordance with Texas law, and the Court sees no need to address that issue any further at this time. Texas law governs the interpretation of the Contract.

I. The Nations Law Firm's Motion [177]

The Firm's argument in favor of summary judgment is a simple one. It contends that the scope of its representation of Kee did not include a potential medical malpractice claim and that it therefore cannot be held liable for purported deficiencies associated with its failure to pursue a medical malpractice claim. To support its position, The Nations Law Firm states that the Attorney-

4

Client Contract and its other communications with Kee made clear that it was pursuing only a potential *products liability* claim—not a potential *medical malpractice* claim.

The Court first looks to the language of the Attorney-Client Contract. The first section of the Contract addresses the purpose of the representation and specifically states:

> I. Purpose of Representation. Client retains Attorneys to prosecute all claims against all necessary defendants arising out of Event: Injury(ies) after implantation of IVC filter

[177], Ex. 1.

Under Texas law, a court construing a contract "must look to the language of the parties' agreement." *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). The Texas Supreme Court further explained:

> We must give effect to the parties' intentions, as expressed in their agreement. We will give [] contract language its plain, grammatical meaning unless it would clearly defeat the parties' intentions. If we determine the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law. But if the contract contains two or more reasonable interpretations, the contract is ambiguous, creating a fact issue as to the parties' intent.

*Id.* (citing *Murphy Expl. & Prod. Co.-USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018)) (additional and internal citations and internal quotation marks omitted).

The Firm asserts that, applying this standard, the Contract unambiguously does not contemplate the pursuit of a medical malpractice claim. Specifically, the Firm asserts: "There is no mention of a medical negligence claim. The parties understood the representation only included claims for injuries caused by a defective filter." [178] at p. 5. Conversely, Kee takes the position that the Contract unambiguously includes a potential medical malpractice claim. In particular, she asserts that "[t]here is nothing ambiguous regarding the terms 'all claims' and 'all defendants' and

5

the scope is otherwise limited to injuries suffered after the implantation of the filter which reasonably suggests a causal relation between injury and filter." [184] at p. 14.

In other words, both parties contend that the Attorney-Client contract unambiguously supports their position. However, "[l]ack of clarity or a disagreement among the parties does not necessarily create an ambiguity." *Clark v. Cotten Schmidt, LLP*, 327 S.W.3d 765, 773 (Tex. Ct. App. 2010) (citing *Univ. Health Servs., Inc. v. Renaissance Women's Grp., PA*, 121 S.W.3d 742, 746 (Tex. 2003)). Instead, as noted above, the pertinent language must be susceptible to two or more reasonable interpretations to be ambiguous. *See Barrow-Shaver Resources Co.*, 590 S.W.3d at 479.

Considering the pertinent language, the Court finds both proposed interpretations to be reasonable. On the one hand, the Contract does state that The Firm will prosecute *all claims* against *all necessary defendants* arising out of injuries *after implantation of the filter*. The injuries Kee sustained certainly arose after implantation of the filter, and there were no specific caveats listed in the Contract. On the other hand, the Court finds the Contract can also reasonably be read in such a manner that it does not include a medical malpractice claim. The "after implantation of IVC filter" language could reasonably be read to limit the injuries to those related to the damage caused by such implantation—not the related follow up medical treatment. "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *RPC, Inc. v. CTMI, LLC*, 606 S.W.3d 469, 484 (Tex. Ct. App. 2020) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). Because the Court finds the Attorney-Client Contract to be susceptible to more than one reasonable interpretation, the Contract is ambiguous.

The Firm urges the Court to look to extraneous evidence. For instance, it points to a November 6, 2015 letter it sent to Kee, wherein The Firm noted that "[a]s a reminder, our firm,

6

represents you in your IVC filter case *against the manufacturer*." [177], Ex. 5 at p. 1 (emphasis added). The letter further explained that The Firm was placing Kee's case in a "holding pattern" because The Firm was not at that time actively prosecuting cases for the type of filter Kee received. *Id*. In addition, The Firm points to certain statements Kee made during her deposition:

> Q. Okay. Not necessarily related to this letter, but in general, did you ever have any conversations with any employee at the Nations Firm about them filing a medical malpractice claim for you?
>
> A. I don't recall.
>
> . . .
>
> Q. And I've not seen any mention of medical malpractice in any of the documents, but I wanted to ask you. Did you have any conversations with anybody at the Nations Firm about filing a medical malpractice claim for you?
>
> A. I don't recall having one. I remember being asked a lot of questions about whether anything happened over the course of treatment. But, no, I don't remember having a conversation about medical malpractice.
>
> Q. Okay. And it wasn't your expectation that they were going to file a medical malpractice claim, was it?
>
> A. No.
>
> Q. Okay.
>
> A. That's not why I contacted them initially.

[177], Ex. 2 at p. 3-4.

The Nations Law Firm argues that all of this evidence illustrates the parties' intent that the representation be limited to a products liability claim against the IVC filter manufacturer—not a medical malpractice claim.

Kee counters these points in various ways. She characterizes the November 6, 2015 letter as an attempt by The Firm to alter (by narrowing) the broad language of the original Attorney-Client Contract. She therefore argues that it should be carefully scrutinized since "contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized[.]" *Keese v. Barbknecht Firm, PC*, 2022 WL 965399, at *6 (E.D. Tex. Mar. 30, 2022) (quoting *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 699 (Tex. 2000)). She also notes that the Attorney-Client Contract must be construed against The Firm as the drafter of the agreement. *See, e.g.*, *Perthuis v. Baylor Miraca Genetics Laboratories, LLC*, 645 S.W.3d 228, 241 (Tex. 2022) (quoting *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990)) (requiring the construction of contractual ambiguity "against the party who drafted it since the drafter is responsible for the language used").

Ultimately, "[w]hen a court determines that a contract is ambiguous, the meaning becomes a fact issue for the jury, and extraneous evidence may be admitted to help determine the language's meaning." *RPC, Inc. v. CTMI, LLC*, 606 S.W.3d at 484 (quoting *Barrow-Shaver Res. Co.*, 590 S.W.3d at 480). Stated differently, "if a contract is ambiguous, then interpretation of the contract presents a fact issue for the jury." *Clark*, 327 S.W.3d at 773 (citation omitted). Both parties have come forward with evidence and arguments to support their position. The Court finds that, consistent with Texas law, the matter should be resolved by a jury—not this Court at the summary judgment stage.

To the extent The Nations Law Firm's Motion [177] seeks dismissal of Kee's legal malpractice claim, it is DENIED.

The Nations Law Firm also seeks dismissal of Kee's punitive damages claim. Mississippi Code Section 11-1-65 governs punitive damages and, in pertinent part, provides:

> (1) In any action in which punitive damages are sought:
>
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidence a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
>
> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.

Miss. Code Ann. § 11-1-65(1).[3]

The Firm contends that Kee simply cannot come forward with any facts to show by clear and convincing evidence that it acted with actual malice or gross negligence. Kee's response to The Firm's argument as to punitive damages is brief—the Court will quote it in full:

> Kee clearly has a punitive damages claim if we consider the proof of the fiduciary, contractual and tort duties TNLF owed to Kee and their breach. Although Mississippi law does not favor punitive damages, they are appropriate if there is proof that the underlying injury was the result of "some element of insult, malice or gross negligence" or "willful or wanton conduct" on TNLF's part. Bradfield v. Schwartz, 936 So.2d 931, 936 (Miss. 2006). In our case,

---

[3] In citing Mississippi law—as opposed to Texas law—the Court notes that the Attorney-Client Contract does not attempt to extend to claims sounding in tort, such as legal malpractice, breach of fiduciary duty, or any damages claims arising therefrom. *See, e.g.*, *Cypress Pharmaceuticals, Inc. v. CRS Mgmt., Inc.*, 827 F. Supp. 2d 710, 721 (S.D. Miss. 2011) (concluding that "the parties' choice-of-law provision selecting New Jersey is valid as to plaintiff's contract claims but does not encompass the tort claims."). The parties do not seriously dispute this issue. Therefore, consistent with the Attorney-Client Contract's language, the Court will interpret the contractual language itself in accordance with Texas law but will apply Mississippi law to the other claims.

> the proof sufficiently creates a genuine issue of fact on whether TNLF, by acting in ways which disregarded its contractual and fiduciary obligations to Kee by failing to investigate and pursue a viable medical malpractice claim on her behalf (Nations testified that it was aware in September 2015 that the IVC filter was retrievable and that McPherson instead crushed the filter with consequent injury to Kee but it wasn't interested in pursuing that claim without informing Kee), while also acting in its own interests, states a viable punitive damages claim.

[184] at p. 16-17.

As the excerpt illustrates, Kee makes a passing summary of The Firm's Rule 30(b)(6) deposition testimony but otherwise points to no *specific* evidence supporting punitive damages. And, at the summary judgment stage, the non-moving party bears the burden to come forward with specific evidence to support her claim. *See*, *e.g.*, *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)) ("[T]he nonmovant must 'identify *specific* evidence in the record and . . . articulate the *precise* manner in which that evidence supports his or her claim.'") (emphasis added). Here, the Court finds that Kee has not come forward with competent summary judgment type evidence to show actual malice or gross negligence. Rather, this case appears to be one of, at most, negligence.

Kee has not provided sufficient evidence to preclude summary judgment on her punitive damages claim. Therefore, to the extent The Firm's Motion [177] seeks dismissal of that claim, it is GRANTED. Kee's claim for punitive damages is dismissed *with prejudice*.

II. Kee's Motion [179]

Kee contends that she is entitled to judgment as a matter of law on her legal malpractice and breach of fiduciary duty claims. To prevail on a legal malpractice claim, a plaintiff must prove the following elements: "(1) the existence of an attorney-client relationship; (2) negligence on the part of the lawyer in handling the affairs of the client which have been entrusted to the lawyer; and

(3) proximate cause of the injury." *Pierce v. Cook*, 992 So.2d 612, 617 (Miss. 2008) (citing *Hickox v. Holleman*, 502 So.2d 626, 635 (Miss. 1987)); *see also Donovan v. Burwell*, 199 So.3d 725, 732 (Miss. Ct. App. 2016). Similarly, "when the malpractice claim is based on an allegation of breach of fiduciary duty, the plaintiff must establish (1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that breach proximately caused the injury; and (4) the fact and extent of the injury." *White v. Nelson,* 196 So.3d 1039, 1046 (Miss. Ct. App. 2016).

Kee contends that she has proven these elements as a matter of law. As to the first element of each claim—the existence of an attorney-client relationship—there is no dispute between the parties, as the Attorney-Client Contract clearly shows the existence of such a relationship. The crux of the parties' dispute concerns whether The Firm acted negligently in its handling of Kee's case (the second element). Arguing that The Firm did so, Kee argues as follows:

> In spite of its agreement with Kee, TNLF has admitted that its investigation and review of Kee's medical records did not include the potential medical malpractice of her treating physicians. TNLF also admitted that it was aware the ALN IVC filter implanted in Kee was retrievable but was crushed by McPherson based on the mistaken belief that it was not retrievable. . . The expert opinions of Professor Donald Campbell and Robert L. Gibbs establish both the scope of TNLF's representation as including potential medical malpractice claims and that the failure to timely pursue those claims (within the applicable statute of limitations) constituted a breach of the duty owed to Kee (as informed by the Mississippi Rules of Professional Conduct) and a breach of fiduciary duties.

[180] at p. 12.

Kee also directs the Court to the deposition testimony of her experts, specifically noting "[t]he expert opinions of Professor Donald Campbell and Robert L. Gibbs establish both the scope of TNLF's representation as including potential medical malpractice claims and that the failure to timely pursue those claims (within the applicable statute of limitations) constituted a breach of the

11

duty owed to Kee (as informed by the Mississippi Rules of Professional Conduct) and a breach of fiduciary duties." [180] at p. 13.

The Nations Law Firm's response to Kee's contentions is essentially the same argument it made to support its own Motion for Summary Judgment [177]—in particular, that it never agreed to pursue a medical malpractice claim on Kee's behalf and that it therefore could not have acted negligently in failing to do so. The Firm also attached to its Response [181] the written reports of its experts. One of its experts, Willie Abston, Esq., concluded that Kee's medical malpractice claim did not accrue until she received the written report of Dr. Scott Resnick (associated with this litigation) on March 18, 2021.

The Court will not repeat its analysis set forth above in connection with The Firm's Motion [177]. However, pursuant to that same reasoning, the Court finds that the Attorney-Client Contract is ambiguous as to whether the pursuit of a medical malpractice claim was included within the scope of representation. Further, the Court finds that The Firm has otherwise come forward with competent summary judgment evidence to support its position that it did not act negligently.

In sum, the Court finds that questions of fact, which should be resolved by a jury, remain. Kee is not entitled to summary judgment on her claims, and her Motion [179] is therefore DENIED.

*Conclusion*

For the reasons set forth above, The Nations Law Firm's Motion for Summary Judgment [177] is GRANTED IN PART and DENIED IN PART. Kee's claim for punitive damages is dismissed *with prejudice*. Kee's Motion for Summary Judgment [179] is DENIED.

SO ORDERED, this the 16th day of August, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE